**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

CAROLYN PERKINS                                                                      PLAINTIFF

V.                              CASE NO.: 1:10CV00095 BD

CAROLYN W. COLVIN,[1] Commissioner,
Social Security Administration                                                    DEFENDANT

**ORDER AFFIRMING COMMISSIONER**

Plaintiff Carolyn Perkins sought judicial review of the denial of her applications for disability insurance benefits and supplemental security income.[2] In her May 10, 2006 applications, Ms. Perkins alleged that she became disabled on January 1, 1999, but at her hearing she amended the onset date to August 1, 2005. (SSA record at 1322) Ms. Perkins based her disability claims on a spinal injury and hip impairments.[3]

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. She is therefore substituted as the named Defendant for Michael J. Astrue, pursuant to Fed.R.Civ.P. 25(d).

[2] Ms. Perkins remained insured through June 30, 2006. Consequently, she must establish disability on or before that date in order to be entitled to disability insurance benefits. 20 C.F.R. § 404.131; SSA record at 19.

[3] Plaintiff claims to have chronic pain syndrome and to meet listing 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.02, but she does not cite to any evidence in the record to establish that she meets the specific criteria required to meet the listing. (#14 at p. 6) Accordingly, the claim does not warrant further discussion and is summarily dismissed. See *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530–31, 110 S.Ct. 885 (1990)) (step three requires the claimant to establish that an impairment meets or equals a listing by establishing all of the listing's specified

Ms. Perkins was forty years old at the time of her May 24, 2012, hearing. (*Id*. at 1324) She had a tenth-grade education and had passed the General Educational Development exam. *(Id.)* She had past work as a factory worker, housekeeper, and sitter. She lived with her disabled husband and her two daughters, one of whom was also disabled.

**The Commissioner's Decision**

On September 8, 2008, an administrative law judge ("ALJ") denied Ms. Perkins's claims, and the Appeals Council declined review. Ms. Perkins appealed. (Docket entry #2) While her appeal was pending, she filed new applications for benefits, and an ALJ held a second hearing. (SSA record at 18) The ALJ denied the applications. (*Id*. at 230-40)

On March 17, 2011, Ms. Perkins's appeal was remanded to the Commissioner because the Commissioner could not locate the claims file or the recording of Ms. Perkins's first administrative hearing. (#7) The Appeals Council found that the remand had rendered her new applications moot. (*Id*. at 18)

---

criteria); see also *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (summarily rejecting conclusory assertion that ALJ did not consider whether appellant met certain listings, where no analysis of law or facts was provided); see also 20 C.F.R. §§ 404.1525(d), 416.925(d) (2011); *Harris v. Barnhart*, 356 F.3d 926, 929 (8th Cir. 2004) (diagnoses are not sufficient, by themselves, to demonstrate that a condition meets the requisite medical criteria).

After holding a third hearing, the ALJ denied Ms. Perkins's applications for benefits. (*Id*. at 18-30) The Commissioner's ALJ determined that Ms. Perkins had severe impairments– degenerative disc disease of the lumbar spine, fibromyalgia, and chondromalacia of the right knee. (*Id*. at 21) The ALJ also found, however, that Ms. Perkins had the residual functional capacity ("RFC") to perform light work; she had no limitations as far as operation of hand or foot controls; she could occasionally climb ramps or stairs; but never climb ropes, ladders, or scaffolds; and could occasionally balance, stoop, kneel, crouch, and crawl. (*Id*. at 24-28) He also found she had no environmental or any other non-exertional impairment. (*Id*.) Because the vocational expert testified that there were jobs available that a person with Ms. Perkins's RFC could perform,[4] the ALJ concluded that she was not disabled under the Social Security Act and denied the applications. (*Id*. at 28-30)

After the Commissioner's Appeals Council denied Ms. Perkins's request for review, the ALJ's June 15, 2012 decision became a final decision for judicial review. (*Id*. at 8-9) Ms. Perkins reopened this case to challenge the ALJ's decision. In reviewing the decision, the court must determine whether substantial evidence supported the decision and whether the ALJ made a legal error.[5]

---

[4]The ALJ testified that a person with Ms. Perkins's RFC could perform the jobs of cashier and waitress. *Id*. at 29.

[5]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Slusser v. Astrue*, 557 F.3d 923,

**Credibility**

Ms. Perkins claims that the ALJ failed to account for her chronic back pain, mental impairments, and side effects from her medication, but substantial evidence supports the ALJ's determination that Ms. Perkins was not fully credible. (SSA record at 21-22)

An ALJ has a duty "to assess the credibility of the claimant and other witnesses." *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). A reviewing court "will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (citation omitted).

To evaluate Ms. Perkins's credibility, the ALJ followed the required two-step process and considered the required factors.[6] SSA record at pp. 24-28; see *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims:*

---

925 (8th Cir. 2009) (stating that the court's "review of the Commissioner's denial of benefits is limited to whether the decision is 'supported by substantial evidence in the record as a whole'"); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[6]In considering the credibility of a claimant's subjective complaints, an ALJ must consider: (1) the claimant's prior work record; (2) observations by third parties and treating and examining physicians relating to such matters as: (a) the claimant's daily activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and aggravating factors; (d) dosage, effectiveness and side effects of medication; and (e) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

*Assessing the Credibility of an Individual's Statements*, SSR 96-7p (July 2, 1996). Thus, the question before the court is whether substantial evidence supports the ALJ's credibility evaluation.

The ALJ may discount a claimant's complaints of pain if they are inconsistent with the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001); *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996) ("An ALJ may discount a claimant's subjective complaints of pain only if there are inconsistencies in the record as a whole.").

An MRI of Ms. Perkins's back in September, 2006, showed only mild degenerative changes with a small disc bulge and no nerve root or thecal sac compression. (*Id*. at 573) A CT of her lumbar spine in September 2008 showed no apparent compression of her lumbar vertebrae. (*Id*. at 509) An x-ray of her lumbar spine in September, 2008, showed "mild" intevertebral narrowing at L5-S1. (*Id*. at 508) And a November, 2008 MRI of her lumbar spine showed only a mild disc bulge with no effacement of the dural sac or nerve roots. (*Id*. at 500) An x-ray of her left foot in January, 2009, showed no fractures or dislocations and an x-ray of her right knee in November, 2009, showed normal alignment and joint spaces with no soft tissue abnormalities, fractures, or bony lesions. (*Id*. at 494, 772)

Dr. Donald Lamoureaux, Ms. Perkins's primary care physician, repeatedly described Ms. Perkins as in no acute distress, with a normal gait, and with no motor

sensory deficits. (*Id*. at 539, 635, 701, 704, 707, 710, 713, 716, 725, 732, 735, 738, 741, 744, 747, 750, 753, 756, 759, 761, 763, 765, 767, 834, 864, 874, 877) On examination by Meraj Siddiqui, M.D., in March, 2011, Ms. Perkins's muscle strength and tone were normal in her upper and lower extremities, and she showed normal deep tendon reflexes. (*Id*. at 977-78)

None of Ms. Perkins's treating physicians imposed work restrictions on Ms. Perkins. To the contrary, Dr. Siddiqui advised Ms. Perkins to maintain normal activities. (*Id*. at 978)

Ms. Perkins claims her mental impairments prevented her from working. The record, however, supports the ALJ's conclusion that Ms. Perkins's mental impairments did not significantly affect her ability to work. Ms. Perkins's treating physician, Dr. Lamoureax, observed during her visits between December 2005 and September 2010, that her judgment, insight, orientation, memory, mood, and affect were normal. (SSR at 580, 701, 704, 707, 710, 713, 716, 719, 722, 725, 732, 735, 738, 741, 744, 747, 750, 753, 756, 759, 761, 763, 765, 767, 874-77, 1022, 1028, 1031, 1033) Dr. Lamoureax also repeatedly noted that Mr. Perkins's anxiety was controlled by medication. (*Id*. at 701, 704, 707, 710, 713, 716, 719, 722, 725, 729, 735, 738, 741, 744, 747, 750, 753, 756, 759, 760, 767, 1028)

Physicians who treated Ms. Perkins in the emergency room in November, 2004; January, August, and November 2007; April and September 2008; and September 2009

all noted that Ms. Perkins showed normal memory, insight, concentration, and speech. (*Id*. at 488, 505, 516, 522-23, 539, 635)

In March, 2010, Kenneth Hobby, Ph.D., conducted a mental health evaluation of Ms. Perkins and noted that she maintained appropriate eye contact, showed normal motor activity thought processes, exhibited no limitations in her ability to attend and sustain concentration, and demonstrated appropriate mood and affect with good contact with reality. (*Id*. at 793-94, 798) Dr. Hobby concluded that Ms. Perkins could respond to normal instructions, would probably respond adequately to work pressures, and the pace at which she worked was steady and appropriate for completing basic work-like tasks. (*Id*. at 798) In spite of her allegations of panic attacks, Ms. Perkins reported panic attacks to a physician only on two occasions. (*Id*. at 789-800, 977)

Ms. Perkins complains that the ALJ failed to consider the side effects of her medications, including dizziness, sleepiness, confusion, and memory loss. (#14 at p. 2) The record, however, indicates that Ms. Perkins complained of mental confusion due to her medication on only two occasions, and both times she had accidentally overdosed. (*Id*. at 884, 878)

The ALJ also considered that Ms. Perkins had a sporadic work history that included work performed after her alleged disability onset date. (*Id*. at 25) Additionally, he considered Ms. Perkins's daily activity level. (*Id*. at 118, 122-24, 140, 143, 752, 791, 833, 873, 876, 995) She reported being able to take care of herself without help, help

care for her disabled husband, cook quick meals, take her medications without assistance, watch television, vacuum, wash dishes, and do laundry. (*Id.*) She also told her physicians she had back pain after activities such as lifting her grandchildren, helping her daughter move to college, and taking care of her grandchild. (*Id*. at 752, 833, 873, 876, 995) The ALJ's credibility determination is supported by substantial evidence.

**Residual Functional Capacity**

The ALJ found that Ms. Perkins could perform light work; she had no limitations as far as operation of hand or foot controls; she could occasionally climb ramps or stairs; but never climb ropes, ladders, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. He also found she had no environmental or any other non-exertional impairment. (*Id*. at p. 24) Ms. Perkins complains that the ALJ erred by finding she could perform light work. She argues that she could not, due to her inability to ambulate effectively. Ms. Perkins testified that she had taken several bad falls and had fallen at Wal-Mart twice and at the Dollar Store. (*Id*. at 1326, 1329)

As set forth above, the ALJ found Ms. Perkins's statements were not credible. Again, Dr. Lamoureaux repeatedly characterized her gait as normal and noted no motor or sensory deficits. (*Id*. at 539, 635, 701, 704, 707, 710, 713, 716, 725, 732, 735, 738, 741, 744, 747, 750, 753, 756, 759, 761, 763, 765, 767, 834, 864, 874, 877) None of her physicians imposed restrictions on her activity level, and Dr. Siddiqi advised her to maintain normal activites. (*Id*. at 978) Ms. Perkins's activities of daily living also

support the ALJ's RFC finding.  (*Id*. at 118, 122, 123, 124, 140, 143, 752, 833, 873, 876, 995)

Further, a diagnosis of fibromyalgia alone does not establish a disabling impairment.  See *Perkins v. Astrue*, 648 F.3d 892, 899-900 (8th Cir. 2011).  Here, the ALJ considered Ms. Perkins's diagnosis of fibromyalgia along with her other impairments when determining her RFC.  (SSA record at 24-28)

### Hypothetical

Finally, Ms. Perkins complains that the ALJ did not ask the Vocational Expert ("VE") a proper hypothetical because the hypothetical did not include any mental limitations.  (#14 at p. 7)  Having concluded above, however, that the ALJ did not err in assessing Ms. Perkins's credibility or RFC, the ALJ's hypothetical included all of the limitations supported by the record.  Accordingly, the VE's testimony was sufficient evidence to support the ALJ's conclusion at step five that Ms. Perkins was not disabled.

### Conclusion

Substantial evidence supports the ALJ's decision denying Ms. Perkins's applications.  The ALJ made no legal error.  For these reasons, Ms. Perkins's request for relief (docket entry # 2) is DENIED, and the decision denying the applications for benefits is AFFIRMED.

DATED this 13th day of December, 2013.

_____
UNITED STATES MAGISTRATE JUDGE